UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JOHN OSBOURNE p/k/a OZZY OSBOURNE,

                          Plaintiff,

          v.

No. 09 Civ. 04947 (JGK)

ANTHONY IOMMI,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

       Defendant Anthony Iommi, by and through his attorneys DeVore & DeMarco LLP, hereby moves the Court to dismiss the complaint filed in the above-referenced action pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(3). Defendant brings this motion because Plaintiff relinquished all rights to the Black Sabbath mark by binding contract, and thus fails to state a claim upon which relief may be granted.

<u>PRELIMINARY STATEMENT</u>

       In an effort to rewrite long-settled history, Plaintiff Osbourne engages in an extraordinary display of hide-the-ball and misrepresentation in the complaint. Indeed, the complaint omits the core fact that disposes of Osbourne's claims: after voluntarily leaving the rock band Black Sabbath he and Iommi co-founded, *Osbourne in 1980 signed an agreement assigning and relinquishing all rights to the name Black Sabbath*. The terms of that signed agreement are unequivocal: absent a subsequent written agreement, which is not alleged and does not exist, Osbourne has absolutely no rights to the Black Sabbath name. Moreover, as the complaint concedes by omission, Iommi is the only original member of Black Sabbath who has

from day one continuously performed, recorded, and sold albums and merchandise under the Black Sabbath name. Reflecting his exclusive rights, Iommi successfully registered the Black Sabbath trademark in three jurisdictions and is the sole owner of the mark.

Osbourne's complaint attempts to conceal both the fact that he gave up all his rights in the Black Sabbath trademark by binding contract and Iommi's exclusive continuous and uninterrupted use of the mark since cofounding the band. Although these dispositive facts are well known to both parties, Osbourne additionally has been on constructive notice of Iommi's sole ownership of the mark since at least 2000 when Iommi registered the mark with the United States Patent and Trademark Office. In short, Osbourne has no basis to claim ownership in the mark, profits from the sale of merchandise bearing the mark, or that Iommi fraudulently registered the mark by failing to recognize Osbourne's purported rights. Accordingly, the complaint should be swiftly dismissed in its entirety.

## STATEMENT OF FACTS

Iommi and Osbourne founded the rock band Black Sabbath in 1969. (Compl. ¶¶ 2, 8.) The band has enjoyed considerable success over the years. (*Id*. ¶ 8.) Osbourne left Black Sabbath in or around 1980 and had no involvement with the band for over sixteen years. (*Id*. ¶ 9.) During this period, Iommi continued to perform, record, and sell records under the name Black Sabbath. (*Id*. ¶ 9.)

Upon his departure from the band, Osbourne signed a separation agreement dated June 30, 1980 (the "Separation Agreement"; a copy of the Separation Agreement is attached as Exhibit A to the Declaration of A. Kassam in Support of Defendant's Motion to Dismiss). Osbourne and his company, Monowise Ltd. ("Monowsie"), received compensation under that Separation Agreement and agreed, among other things, to dissolve their partnership with the

2

remaining members of Black Sabbath, which at that time included Iommi, William Ward, and Terrence Butler.  (*See* Ex. A. to Kassam Decl.)  Most significantly, Osbourne and Monowise further agreed to "***assign and transfer to BLACK SABBATH any and all rights of any kind or nature that they have or have had in the name 'BLACK SABBATH'***," and that neither thereafter could, "directly or indirectly, use, permit, or authorize the use of the name 'BLACK SABBATH' or any part of it or any similar name in connection with any activities in and throughout the entertainment industry."  (*Id*. ¶ 12 (emphasis supplied).)  Moreover, the Separation Agreement provides unequivocally that "[n]o modification, amendment, waiver, termination or discharge of this Agreement, or any provision hereof, shall be effective unless confirmed by a written instrument signed by the parties sought to be bound."  (*Id*. ¶ 18.)  Furthermore, "[n]o waiver of any provision of this Agreement, or any default hereunder, shall effect the waiving party's rights thereafter to enforce such provision or to exercise any right or remedy in the event of any other default whether or not similar."  (*Id*.)

       Subsequently, as sole owner of the mark and the only continuous member of Black Sabbath for over forty years, Iommi successfully registered the Black Sabbath trademark in the United States, the United Kingdom, and the European Union.  (Compl. ¶ 14.)  Iommi's registration of the "Black Sabbath" mark with the United States Patent and Trademark Office dates back to October 21, 2000.  (A copy of that registration certificate is attached as Exhibit B to the Kassam Decl.)  Iommi is and remains the sole registered owner of the mark in these three jurisdictions.

ARGUMENT

I.      <u>Legal Standards Applicable to Motion to Dismiss Under Fed. R. Civ. P. 12(B)(6)</u>

       In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the Plaintiff's

favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). It is well-established, however, that "the complaint must set forth enough information to suggest that relief would be based on some recognized legal theory." *Fort Wayne Telstat v. Entertainment and Sports Programming Network*, 753 F. Supp. 110, 111 (S.D.N.Y. 1999). "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (internal citations omitted). As this Court has made equally clear, in determining whether to dismiss a complaint pursuant to Rule 12(b)(6), a court may consider documents referenced in the complaint and that the plaintiff relied on in bringing suit, or that the plaintiff possessed and knew of when bringing suit, as well as matters of which judicial notice may be taken. *Cowan v. Ernest Codelia*, P.C., 149 F. Supp. 2d 67, 70 (S.D.N.Y. 2001); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

Plaintiff attempts to conceal from the Court critical documents – including a Separation Agreement he signed and has been aware of for nearly thirty years – that dispose of his claims entirely. He compounds that deception by falsely asserting that he never validly assigned his rights to Iommi. (Compl. ¶ 10.) As the Second Circuit has made clear, when a plaintiff "chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure." *Cortec Indus. v. Sum Holding*, 949 F.2d 42, 48 (2d Cir. 1991); *see also, Jasper v. Sony Music Entm't*, 378 F. Supp. 2d 334, 338 (S.D.N.Y. 2005) ("The classic example of documents that may be considered on a

4

motion to dismiss even though the plaintiff does not physically attach them to the complaint are contracts that underlie the claims in suit. . . ."). The U.S. trademark registration is referenced in the complaint, (*see* Compl. ¶ 14), and is also a matter of public record of which the Court may take judicial notice. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). And of course, that "registered trademark carries with it a presumption of validity and its holder a presumption of ownership." *Sly Magazine, LLC v. Weider Publ'ns L.L.C.*, 241 F.R.D. 527, 531 (S.D.N.Y. 2007) (citing 15 U.S.C. § 1057(b)).

II.     Osbourne Cannot State a Claim for Which Relief May Be Granted
        <u>Because He Relinquished All Rights to the Black Sabbath Trademark</u>

Plaintiff's first three causes of action are based on the false premise that he is a part owner of the Black Sabbath trademark. But Osbourne unequivocally relinquished all rights to the trademark by written contract upon his departure from the band. His claims are therefore baseless and should be dismissed as a matter of law.

Under the clear terms of the fully-executed Separation Agreement between Osbourne and the remaining members of Black Sabbath, Osbourne voluntarily gave up his place in the band and all rights in the Black Sabbath mark. That Separation Agreement mandates that *the only way to modify, terminate, or waive that unequivocal relinquishment of rights would be by a written and fully-executed subsequent agreement*. (Ex. A. to Kassam Decl. ¶ 12). Osbourne has not, and cannot, allege such a subsequent agreement. To the contrary, Osbourne attempts to conceal the very existence of the underlying Separation Agreement that ends his case, and instead misleadingly asserts that he never validly assigned his rights to Iommi. (Compl. ¶ 10.) It is axiomatic that under precisely these circumstances, where "documents contradict Plaintiffs' allegations . . . th[e] Court must grant Defendants' motion to dismiss." *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 182 (S.D.N.Y. 2000); se*e also* 2

5

*Broadway L.L.C. v. Credit Suisse First Boston Mortgage Capital L.L.C.*, No. 00 Civ. 5773, 2001 WL 410074, at *9 (S.D.N.Y. Apr. 23, 2001) ("Plaintiffs' conclusory allegations to the contrary are contradicted by the documents attached to the Complaint, and are therefore insufficient to defeat the motion to dismiss").

Here, the Separation Agreement flatly contradicts Osbourne's claim to own any interest in the Black Sabbath trademark. By the plain terms of the Separation Agreement, Osbourne finally and irrevocably relinquished all of his rights in the Black Sabbath mark. "[A]n assignment . . . is an irrevocable transfer of all rights in a mark." *Prince of Peace Enters., Inc. v. Top Quality Food Market, LLC*, 07 Civ. 00349, 2007 WL 704171, at *3 (S.D.N.Y. Mar. 7, 2007) (citing MCCARTHY ON TRADEMARKS, § 18:1); *Premier Dental Prods. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 853 (3d Cir. 1986) ("[F]ollowing a proper assignment, the assignee steps into the shoes of the assignor."); *see also, OMS Invs. v. Regenerated Res.*, No. C2-06-114, 2008 WL 896306, at *5 (S.D. Oh. Apr. 2, 2008) ("After a valid assignment of a trademark and its good will, the assignee succeeds to all the rights and priorities of the assignee."); 2 MCCARTHY ON TRADEMARKS, §18.04(1) (3d ed. 1995) ("After an assignment, the assignor has divested himself of his trademark rights, and the title of the assignee is superior."). Absent a significant injury to the public – something not alleged and nonexistent here – Osbourne must be bound by the plain terms of that Separation Agreement. *See Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 103 F. Supp. 2d 711, 738 (S.D.N.Y. 2000) ("In the absence of significant injury to the consuming public, a party entering into a settlement agreement with respect to a trademark will be held to its contract."); *VISA Int'l Serv. Assn. v. Bankcard Holders of Am.*, 784 F.2d 1472, 1473 (9th Cir.1986) (same). And, of course, since "[c]ourts adhere to traditional common-law contract principles even in trademark cases," any attempt to attack the

6

Separation Agreement through extrinsic evidence is barred by the parol evidence rule. *Marshak v. Green*, 505 F. Supp. 1054, 1060-61 (S.D.N.Y. 1981).

Osbourne should not be allowed by acts of omission to evade the unequivocal assignment in the Separation Agreement that he knowingly signed and for which he and his company were compensated.[1] *See Marshak*, 505 F. Supp. at 1061 (rejecting argument by former member of "The Drifters" that band's manager did not own the rights to the band's name because, among other things, the band members had assigned those rights to the manager by contract); *McKay v. Mad Murphy's*, 899 F. Supp. 872, 877-78 (D. Conn. 1995) (holding that previous part owner of a restaurant had no trademark right in the restaurant name because he divested all such rights when he transferred his interest to his business partner); *Barr v. Sasser*, No. 91-C-197-B, 1993 WL 461308, at *3-4 (N.D. Okl. Jun. 29, 1993) (finding that defendant had no right to use trademark after selling mark and corresponding business to plaintiff). As in other such cases where courts properly dismiss intellectual property claims based on a binding contract that belies those claims, *see Jasper*, 378 F. Supp. 2d at 338 (dismissing complaint pursuant to Rule 12(b)(6) because underlying agreement established that plaintiff assigned its rights to defendant); *Ariel v. Reuters Group*, No. 05 Civ. 9646, 2006 WL 3161467, at *5 (S.D.N.Y. Oct. 31, 2006) (dismissing claims for copyright infringement and declaratory relief pursuant to Rule 12(b)(6) because the contract between the parties established that defendants were valid licensees), Osbourne's first three causes of action should be dismissed pursuant to Rule 12(b)(6).

---

[1] Any suggestion that Osbourne was not fully aware of the Separation Agreement should be rejected. Osbourne signed the Separation Agreement in 1980, and thus has had actual notice of the Separation Agreement for nearly thirty years. Osborne also has had constructive notice of Iommi's sole ownership of the Black Sabbath trademark mark for at least the nine years since Iommi registered the mark with the United States Patent and Trademark Office. *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 362 (2d Cir. 1959) (the Lanham Act "provides that registration of a trademark on the principal register is constructive notice of the registrant's claim of ownership.").

III.   Plaintiff's Fourth Cause of Action Should be
       <u>Dismissed for Lack of Jurisdiction and/or Improper Venue</u>

Plaintiff's fourth cause of action is based entirely on his right to publicity under California state law and relates to a purported settlement agreement between Iommi and Signatures Network, Inc. ("Signatures"). But dismissal of Osbourne's first three causes of action pursuant to the plain terms of the Separation Agreement leaves no basis to exercise supplemental jurisdiction over this state law claim under 28 U.S.C. § 1367(a). *See Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 64 (2d Cir. 2001) (refusing to exercise supplemental jurisdiction over state law claim after dismissing federal trademark claims). To the extent Osbourne asserts that the Court has diversity jurisdiction over the claim, venue is improper since neither party is a resident of New York, both Signatures and Osbourne are residents of California, and the claim is based on California law. 28 U.S.C. § 1391. Accordingly, Plaintiff's fourth cause of action should be dismissed.

<u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs' complaint should be dismissed in its entirety with prejudice.

Dated: New York, New York
       July 20, 2009

                                        DEVORE & DEMARCO LLP

                                        By:  /s/ Andrew C. DeVore
                                              Andrew DeVore (AD - 3511)
                                              Amin Kassam (AK - 7860)
                                              99 Park Avenue – 16th Floor
                                              New York, N.Y. 10016
                                              (212) 922-9499

                                        *Attorneys for Defendant Anthony Iommi*